IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 2, 2016

**STATE OF TENNESSEE v. CORDALLE BENTON**

**Appeal from the Criminal Court for Shelby County**
**No. 14-03582       John Wheeler Campbell, Judge**
_____

**No. W2016-00323-CCA-R3-CD  -  Filed September 6, 2016**
_____


The Shelby County Grand Jury indicted Cordalle Benton ("the Defendant") for one count
of rape of a child that allegedly occurred between December 1, 2012, and July 16, 2013.
Following a jury trial, the Defendant was convicted as charged and sentenced to thirty-
two years' incarceration.  On appeal, he argues that the evidence was insufficient to
support his conviction.  Discerning no error, we affirm the judgment of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY JR., J., delivered the opinion of the court, in which JOHN EVERETT
WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Stephen C. Bush, District Public Defender; Barry W. Kuhn, Assistant District Public
Defender (on appeal); and Constance Barnes and Terrance Tatum, Assistant District
Public Defenders (at trial), for the appellant, Cordalle Benton.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant
Attorney General; Amy P. Weirich, District Attorney General; and Cavet Ostner and
Lessie Rainey, Assistant District Attorneys General, for the appellee, State of Tennessee.


**OPINION**

**I. Factual and Procedural Background**

     The victim[1] testified that she lived in Memphis with her father, brother, and sister
until she was twelve years old.  At the time of trial, she lived in Indianapolis, Indiana.

---

     [1] Pursuant to the policy of this court, minor victims of sexual offenses are not identified by their
names.

The victim stated that she met the Defendant when she was seven years old. The victim was also close with Rashanda,[2] the Defendant's aunt and a friend of the victim's mother.

On December 27, 2012, the twelve-year-old victim and her brother went to the apartment of a woman named Tiffany, who was the girlfriend of Rashanda's son. Tiffany, Talisha,[3] "some of their friends," the Defendant, the victim, and the victim's brother were at the apartment. Eventually, everyone but the Defendant and the victim left. Once they were alone in the living room, the Defendant told the victim to "come over there and put [her] mouth on his penis." The victim refused, and the Defendant responded, "Don't play . . . . Don't play with me. Come over here and do it." Again, the victim refused. The Defendant then got out his chair and came to where the victim was sitting on the couch, lifted her legs up, started "rubbing on" her feet, and said, "You are so pretty. The boys are going to be after you, and you are so thick." The victim moved her feet away from the Defendant. The Defendant grabbed her feet again and started "putting his hand up [her] leg" underneath her leggings. The victim told the Defendant to stop, but he did not. Then, the Defendant grabbed the victim's legs and pulled them, causing the victim to lie on the couch. The Defendant then took off his shirt, and he tried to take off the victim's leggings. However, the victim held her legs tightly together in order to prevent the Defendant from removing her leggings. At that point, the Defendant took off his own pants and "started making movements against [the victim]." The victim noted that she was lying on the couch and that the Defendant was trying to climb on top of her. The Defendant tried to kiss the victim on the lips, but she would not let him and told him that she did not want to kiss him. The Defendant then forced the victim's legs open and tried to put his hand on her vagina, but the victim would not let him. The Defendant was able to remove the victim's leggings, and then he "put his mouth against [her] vagina." The victim also recalled that the Defendant put his tongue on her vagina. Then, the Defendant "pulled his penis out" and "started like trying to put it up close to [the victim's] vagina." The victim tried to move her legs in order to get the Defendant off of her, but the Defendant inserted his penis inside of the victim's vagina and "started pushing it in and out" for about five minutes. Once he was finished, the Defendant got up and went to Tiffany's bedroom. The victim recalled seeing "white stuff" on the Defendant's shirt and on her leggings when the Defendant went to the bedroom. She said the Defendant did not use a condom. The victim remained on the couch after the Defendant left.

The Defendant told her to come back to Tiffany's bedroom with him, but the victim refused. Then, the Defendant grabbed the victim's arm and took her to Tiffany's

---

[2] Several people are only identified by their first names in the record. Therefore, we must refer to them by their first names in this opinion. We intend no disrespect.

[3] The victim explained that Talisha was Rashanda's daughter.

bedroom. Once they were in the bedroom, the Defendant "did the same thing he did [] on the couch, except for he didn't put his mouth on [the victim's] vagina." The victim recalled that the second encounter took place on the bed. She also stated that the Defendant's penis went "all the way inside" her vagina during this encounter.

After this second encounter, Tiffany, the father of her child, and Talisha returned to the apartment, and the Defendant "ran into the living room." The victim then went into the bathroom. The victim said she stayed in the bathroom because she was embarrassed. She admitted that she did not tell anyone what happened after she came out of the bathroom.

The victim recalled that on June 12, 2013, she was staying at Rashanda's apartment. The Defendant would occasionally come to Rashanda's apartment, and the victim would go into a bedroom in order to avoid the Defendant. That day, the victim had retreated to the bedroom, and the Defendant followed her. The victim tried to leave but could not because the Defendant had his hand against the door. At one point, Rashanda came to the door and asked what was going on in the room. The victim tried to leave, but the Defendant stopped her and told Rashanda, "Auntie, it's nothing. We're talking." Rashanda walked away, and the Defendant "put [the victim] on the bed and forced—tried to force his body onto [hers]." The victim told him, "No," but the Defendant ignored her. The victim held her legs together and avoided the Defendant's attempts to kiss her lips. Eventually, the Defendant took off his shirt and pants, pulled his penis out of his underwear, and told the victim to put her hands on it. The victim refused. The Defendant then pushed the victim onto the bed, removed her pants, and tried "to force [himself] onto [her]." The victim told the Defendant, "No," but the Defendant "slid his penis into [the victim's] vagina again." The victim recalled that it hurt when the Defendant put his penis inside of her. The victim told the Defendant, "No, stop," but the Defendant, "didn't listen, didn't stop, and kept doing it." When the Defendant did stop, he left the room. The victim said that a similar occurrence happened another time before June 12, but she could not remember when it happened.

Approximately two weeks after her final encounter with the Defendant, the victim told Talisha what had happened by typing messages onto her phone and passing the phone to Talisha. Talisha told the victim not to tell anyone because "somebody would try to hurt" the Defendant. The victim also told her cousins, Chyna Malone and Tasha Malone Foster, about what had happened. About a month after telling her cousins, the victim tried to tell her father about what happened. However, the victim's father did not want to talk to her; instead he talked to Tasha Malone Foster. The day after trying to tell her father, the victim spoke with police officers and told them what happened. After speaking with the police, the victim's mother took her to the doctor for an examination.

- 3 -

In September 2013, the victim attended a family reunion in Gatlinburg. There, she told her cousin Tracey Alexander about what happened. After that, the victim went to live with Ms. Alexander in Indianapolis.

On cross-examination, the victim stated that the Defendant was wearing blue jeans and a white "muscle shirt" on December 27, 2012. However, she admitted that, in a prior statement, she said that the Defendant was wearing "some blue jeans probably" and did not mention the muscle shirt. The victim testified that she had three sexual encounters with the Defendant. However, the victim also read a part of her prior statement wherein she told interviewers that she had had four sexual encounters with the Defendant. When asked about the discrepancy, the victim said, "[I]t's only been three times. It was never four." She maintained that she told the interviewers that there had only been three encounters.

Chyna Malone testified that she was the victim's cousin and that they were very close. In June of 2013, Ms. Malone received a phone call from the victim, and the victim was crying. After Ms. Malone convinced the victim to calm down, she asked what was wrong. The victim first told Ms. Malone that "a guy named Cordalle" had touched her inappropriately. When Ms. Malone pressed the victim for details, she said that "there was sex involved, there was touching, and he was going down on her." Ms. Malone recalled that the victim seemed "kind of ashamed, embarrassed" during the conversation.

The victim told Ms. Malone the perpetrator's age, and Ms. Malone became "very concerned." At that point, she decided to involve her mother, Tasha Malone Foster. Ms. Malone and Ms. Foster called the police. However, they were informed that they were not the victim's legal guardians and that the victim's parent would have to call in order for the police to investigate. Ms. Malone and Ms. Foster called the victim's father, but they "did not get anywhere with that."

Tracey Alexander testified that she was the victim's legal guardian. She stated that she attended a family reunion with the victim in October 2013. At that reunion, the victim told Ms. Alexander about "something that had happened to her[.]" After the victim's disclosure, Ms. Alexander immediately called the victim's father. After that phone call was complete, the victim told Ms. Alexander that she did not want to return to Memphis; instead, she wanted to live in Indianapolis with Ms. Alexander. The victim then moved to Indianapolis with Ms. Alexander, and Ms. Alexander became her legal guardian.

Judy Pinson testified that she was a nurse practitioner at the Rape Crisis Center and that she examined the victim in July 2013. Ms. Pinson stated that the victim reported that she had been vaginally penetrated "four times over a period of several months." The physical examination did not reveal any injuries. Ms. Pinson noted that the victim had

already started menstruating. Ms. Pinson stated that the hymen is not easily injured after menstruation begins. Additionally, Ms. Pinson testified that some time had elapsed between the last "episode" and the exam and that an injury could have healed during that time. Ms. Pinson noted that the lack of injury did not rule out the possibility that the victim was raped.

The Defendant testified that he had known the victim since she was approximately two years old. The Defendant stated that he worked at Heavenly Touch Auto Body, an auto shop owned by his cousin. In December 2012, the Defendant lived in Heavenly Touch Auto Body building and kept watch over the premises in order to prevent break-ins. The Defendant explained that no one could get in or out of the shop once the deadbolt was locked. According to the Defendant, the shop closed for the holidays on December 24, 2012. The Defendant was locked into the shop at that time, and he remained locked in the shop until New Year's Day. The Defendant noted that he had a refrigerator in the shop and that he had stocked it so that he would have enough food for the week. The Defendant said he did not have a key to get out of the shop because he had previously lost his key, and he was not given another key because he had "lost [his] privileges[.]" Moreover, the Defendant stated that the front door to the shop could only be unlocked from the outside. The Defendant said the first time he went to Tiffany's apartment was in February 2013 to help her move after she was evicted.

The Defendant also said that he was at work at Heavenly Touch Auto Body on June 12, 2013. Further, the Defendant said that he only went to Rashanda's apartment on the weekends. He noted that four adults and several children lived in Rashanda's apartment and that more people came over on the weekends to "party." The Defendant stated that it would not have been possible for him to confine the victim in a room to have sex because there was no privacy in Rashanda's apartment.

The Defendant denied ever having sex with the victim. The Defendant said he sold drugs for a living and that he would only have sex for money, not "for fun." The Defendant also stated that he was typically attracted to older women. He said he was not attracted to the victim at all and was not aroused by her. The Defendant denied ever asking the victim for oral sex or showing the victim his penis. The Defendant denied performing cunnilingus on the victim or placing his mouth on the victim's breasts. He denied removing the victim's clothing. The Defendant said that he used to view the victim as a younger sister.

On cross-examination, the Defendant said he was not given another key to the auto shop until November 2013. He explained that he would sleep elsewhere on the weekends but that he was locked into the auto shop every Monday through Friday. However, the Defendant admitted that he was arrested for an unrelated offense at his sister's apartment around 6:00 a.m. on a Tuesday morning in August 2012. He explained that he had not

stayed at the shop the night before because his sister asked him to stay with her. Regarding the events of June 2013, the Defendant said he went to Rashanda's apartment on the weekends to party. He noted that the adults would drink "[a] lot of liquor" and take several drugs, including cocaine, and marijuana. However, the Defendant claimed that the adults were "fully aware of everything that's going on around them."

The State elected to seek a conviction on the December 27, 2012 encounter wherein the victim described the Defendant penetrating her vagina with his penis while she was on the couch in Tiffany's apartment. The jury convicted the Defendant of rape of a child, and the trial court sentenced the Defendant to thirty-two years' incarceration. The Defendant's timely motion for new trial was denied. Thereafter, the Defendant filed an untimely notice of appeal, and this court granted the Defendant's motion to excuse the late-filed notice of appeal.

## II. Analysis

On appeal, the Defendant argues that the evidence was insufficient to support his conviction because there was no medical evidence to corroborate the victim's testimony about the December 27, 2012 incident. Additionally, the Defendant asserts that the proof indicated that he was locked inside Heavenly Touch Auto Body on December 27, 2012. The State contends that it was not required to offer evidence to corroborate the victim's testimony and that the evidence presented is sufficient to support the Defendant's conviction. We agree with the State.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact-finder. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. Id. Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. Bland, 958 S.W.2d at 659; Tuggle, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007).

"Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by the victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a) (Supp. 2012). As defined in the code,

> "Sexual penetration" means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required.

Tenn. Code Ann. § 39-13-501(7) (2010).

In this case, the Defendant first asserts that, without corroborating physical evidence, the victim's testimony about the December 27, 2012 incident is insufficient to support his conviction for rape of a child. This court has repeatedly said that the State is not required to present physical evidence to corroborate a victim's testimony. See, e.g., State v. Shaun Royal Hill, No. W2015-00710-CCA-R3-CD, 2016 WL 3351817, at *6 (Tenn. Crim. App. June 9, 2016); State v. David Neal Davis, No. M2009-00691-CCA-R3-CD, 2011 WL 1631828, at *14 (Tenn. Crim. App. Apr. 19, 2011), perm. app. denied (Tenn. Aug. 31, 2011); State v. Bobby B. Barrett, No. W1999-02002-CCA-R3-CD, 2000 WL 1840073, at *8 (Tenn. Crim. App. Dec. 12, 2000), perm. app. denied (Tenn. May 21, 2001). Further, the jury heard Ms. Pinson's testimony explaining why, due to the victim's developmental stage and the lapse of time between the offense and the medical exam, she was unable to determine whether the victim suffered any injury. The jury was entitled to weigh Ms. Pinson's testimony as it saw fit. See Bobby B. Barrett, 2000 WL 1840073, at *8 (noting that the jury heard expert testimony as to the "difficulties inherent in obtaining positive results of oral rape" from swab DNA samples and that the jury could "weigh the lack of positive physical corroborating evidence as it saw fit").

The Defendant also contends that the evidence is insufficient to support his conviction because he testified that he was locked inside Heavenly Touch Auto Body building on December 27, 2012. However, the jury heard his testimony at trial and clearly discredited the Defendant's narrative. We will not disturb their credibility findings on appeal. See Bland, 958 S.W.2d at 659.

Viewing the evidence in the light most favorable to the State, the victim lived in Memphis until she was twelve years old, and the events in question happened when she still lived in Memphis. On December 27, 2012, the Defendant made several sexual advances toward the victim, including asking her to put her mouth on his penis, trying to kiss her, and "rubbing on" her feet. When the victim rebuffed each advance, the Defendant climbed on top of the victim on the couch, removed her leggings, and put his

mouth against her vagina.  He then took off his own pants, inserted his penis inside the victim's vagina, and "started pushing it in and out" for approximately five minutes.  After the encounter, the victim saw "white stuff" on her leggings and on the Defendant's shirt. The evidence is sufficient to support the Defendant's conviction of rape of a child, and the Defendant is not entitled to relief.

### III. Conclusion

For the aforementioned reasons, the judgment of the trial court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE